UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DEXTER GALLIEN | CIVIL ACTION NO. 21-0874 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MICHAEL CANTU, ET AL. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court is Defendant Recover Insurance Company Risk Retention Group, Inc.'s ("Recover") Motion for Summary Judgment. See Record Document 25. No opposition was filed by either the Plaintiff, Dexter Gallien ("Plaintiff"), or the other Defendants, Michael Cantu ("Cantu") and Texas Country Auto Sales, LLC ("TCAS"). Thus, the motion is unopposed. For the reasons set forth below, Recover's motion is **GRANTED**.

**FACTUAL & PROCEDURAL BACKGROUND**

TCAS is a used car dealership and auto repair shop located in Austin, Texas. See Record Document 25-2 at 2. Cantu was an employee of TCAS.[1] See Record Document 25-1. On October 25, 2020, Plaintiff and Cantu were involved in an automobile collision in Lafayette, Louisiana.[2] See Record Document 1. Plaintiff was operating a 1997 GMC Sierra 1500. See Record Document 25-2 at 1. Cantu was operating a 2008 Dodge Ram. See id.

Cantu had traveled to Lafayette for the purpose of repossessing three vehicles located in Louisiana whose owners had defaulted on making payments. See Record

---

[1] Cantu has since obtained new employment. See Record Document 25-5 at 9.
[2] The underlying facts of the collision are not disputed in the current motion. The crux of Recover's argument focuses on why Cantu traveled to Lafayette. As such, the Court will focus on those facts.

Document 25-1. To assist Cantu with the repossessions, TCAS retained the services of T&T Recovery. See id. T&T Recovery's owner and agent, Theresa Pearson ("Pearson"), and employee, Kenneth Waver ("Waver"), were passengers in Cantu's vehicle at the time of the collision. See id. At the time of the accident, Cantu, Pearson, and Waver were on their way to take possession of the third vehicle from an owner in Lafayette. See id.

TCAS, as a used car dealership and auto repair shop, obtained a Commercial Auto Liability insurance coverage policy pursuant to a Garage Coverage Form (the "policy")[3] from Recover. See Record Document 25-2 at 2-3. This policy was in effect at the time of the collision. See id. at 3. The policy contains a "Combined Garage Exclusion Endorsement," which limits coverage under the policy. See Record Document 25-7 at 40. This particular endorsement states, "It is hereby understood and agreed, no coverage is afforded under this policy, for: … Repossession operations." See id.

After the collision, Plaintiff filed the instant suit in 15th Judicial District Court for the Parish of Lafayette, Louisiana. See Record Document 1. Named as defendants in the suit are Cantu, TCAS, and Recover (collectively, "defendants"). See id. Defendants timely removed the suit to this Court. See id. After completing discovery, Recover filed the instant motion for summary judgment. As noted above, no opposition to the motion was filed.

---

[3] TCAS obtained what is known as "garage operations" coverage from Recover. Garage operations contracts are issued to used car businesses because of the special risks these businesses present to both owners and insurers. See Garage liability coverage-Nature of coverage-What are considered "garage operations," 5 Law and Prac. of Ins. Coverage Litig. § 55:14 (2006). These contracts generally provide insurance coverage for two separate liability risks: damage caused by use of the automobiles and damage caused by any business operations which do not involve the autos. See id.

**LAW AND ANALYSIS**

I.   **Legal Standards**

   a.  **Summary Judgment**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 729. A court may consider pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits when determining whether summary judgment is appropriate. See Fed. R. Civ. P. 56(c).

Local Rule 56.2 provides specifically for opposing summary judgment and states, "All material facts set forth in the statement required to be served by the moving party will be *deemed admitted*, for purposes of the motion, unless controverted as required by this rule." (emphasis added). Furthermore, if the opposing party fails to address the movant's assertions of fact, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court, however, cannot grant summary judgment merely because the motion is unopposed. See Fed. R. Civ. P. 56(e)(3); see also Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir. 1995).

### b. Choice of Law

In diversity actions, "federal courts must apply the choice of law rules in the forum state in which the court sits." Am. Int'l Specialty Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003). Considering the instant suit was filed in Louisiana state court and removed to this Court, Louisiana's choice of law rules provide that "the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract." Pioneer Exploration, L.L.C. v. Steadfast Ins. Co., 767 F.3d 503, 512 (5th Cir.2014) (citing Woodfield v. Bowman, 193 F.3d 354, 360 (5th Cir. 1999)). Here, the policy was issued in Texas. See Record Document 25-7 at 1.

The Fifth Circuit identified an exception to this default choice of law rule: "if the laws of the states do not conflict, then no choice-of-law analysis is necessary, and we simply apply the law of the forum state." Pioneer Exploration, 767 F.3d at 512. The Fifth Circuit has repeatedly found that insurance contract interpretation under Texas and Louisiana law do not conflict. See, e.g., Pioneer Exploration, 767 F.3d at 512 (concluding that Texas and Louisiana law do not conflict on the issue of insurance policy interpretation); Aggreko, L.L.C. v. Chartis Specialty Ins. Co., 942 F.3d 682, 688 (5th Cir. 2019) (discussing the similarities of insurance contract interpretation between Texas and Louisiana).

Fifth Circuit precedent clearly indicates that Texas and Louisiana insurance contract laws do not conflict. Moreover, no party in this case has indicated that Louisiana law should not govern the interpretation of the contract in this matter. Therefore, the law of the state of Louisiana, as the forum state, shall govern this Court's analysis of the insurance contract.

### c. Interpreting Insurance Contracts under Louisiana Law

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 191, 206 (5th Cir. 2007) (quoting Cadwallader v. Allstate Ins. Co., 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580). The Louisiana Civil Code instructs that "the judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract by construing words and phrases using their plain, ordinary and generally prevailing meaning." Wisznia Co., Inc. v. General Star Indem. Co., 759 F.3d 446, 448-49 (5th Cir. 2014) (citing La. Civ. Code arts. 2045, 2047 (2019)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, *endorsement*, or application attached to or made a part of the policy." La. Rev. Stat. Ann. § 22:881 (emphasis added); see also La. Civ. Code art. 2050. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." Doerr v. Mobil Oil Corp., 2000-0947 (La. 12-19-00), 774 So. 2d 119, 124. However, "the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." Id. Any ambiguities arising from the policy in dispute "must be construed in favor of the insured to effect, not deny, coverage." Id.

II.     Analysis

Recover urges this Court to find that it is entitled to summary judgment based on the endorsement excluding repossession operations from coverage under the policy. See Record Document 25-2. In support of this argument, Recover cites the policy itself and the depositions from Cantu and Pearson. After reviewing the record and the evidence presented by Recover, the Court finds that there is no genuine dispute of material fact as to whether Recover is obligated to provide coverage to this incident, and Recover is entitled to judgment as a matter of law.

Turning first to the insurance policy between the parties, the Court finds there is no genuine dispute as to whether any ambiguity exists in the policy or the endorsement. Giving the words their plain and ordinary meaning, the policy clearly excludes coverage for repossession operations. The policy contains a "Combined Garage Exclusion Endorsement" that expressly indicates that no coverage under the policy is provided for repossession operations. See Record Document 25-7 at 40. Additionally, neither the insured (TCAS) nor the Plaintiff have given this Court a reasonable interpretation of the plain language of this agreement such that repossession operations would be covered under the policy. Therefore, since the Court finds the insurance policy clearly excludes repossession operations, the remaining inquiry is whether Cantu was engaged in repossession operations when the collision occurred.

According to Local Rule 56.2, *supra*, all uncontroverted material facts are to be deemed admitted. Here, the uncontroverted facts show that Cantu was involved in repossession operations at the time of the collision. First, Recover presented evidence that Cantu, Pearson, and Waver were in Lafayette for the purpose of repossessing a

vehicle from an owner who had stopped making payments. See Record Document 25-1 at ¶¶ 9 and 10. In addition, uncontroverted testimony from Pearson shows that she received a repossession order from TCAS and was hired solely for the purpose of repossessing three vehicles located in Louisiana. See Record Document 25-6 at 20. At the time of the collision, Cantu, Pearson, and Waver had taken possession of two of the three vehicles they had come to Louisiana to retrieve and were on their way to retrieve the third vehicle. See Record Document 25-2 at 8. This repossession was occurring pursuant to a repossession order issued by TCAS. See id.; see also Record Document 25-6 at 20 (wherein Pearson confirms she received a repossession order from TCAS). Based on the uncontroverted evidence presented by Recover, the Court finds that Cantu, Pearson, and Waver were involved in repossession operations at the time of the collision.

Since Cantu was involved in an activity not covered by the policy between TCAS and Recover, the Court finds that, as a matter of law, Recover has no obligation to provide coverage in this case. As such, Recover's motion for summary judgment is **GRANTED.**

## CONCLUSION

For the reasons set forth above, Recover's Motion for Summary Judgment is **GRANTED**.

An order consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 23rd day of February, 2023.

_____
S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT JUDGE